**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **Chambers of** | **101 West Lombard Street** |
| **Douglas R. Miller** | **Baltimore, Maryland 21201** |
| **United States Magistrate Judge** | **MDD_DRMChambers@mdd.uscourts.gov** |
| | **(410) 962-7770** |

April 21, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:     *Al-Nissa J. v. Frank Bisignano, Commissioner, Social Security Administration*
         Civil No. 25-1593-DRM

Dear Counsel:

On May 16, 2025, Plaintiff Al-Nissa J. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case and the parties' briefs. ECF Nos. 8, 12, 17, 18. I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I.      PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for a period of disability and Disability Insurance Benefits on April 7, 2022, and a Title XVI application for Supplemental Security Income ("SSI") Benefits on April 28, 2022, alleging a disability onset of December 8, 2021. Tr. 244-245, 237-243. Plaintiff's claims were denied initially on May 11, 2023, and on reconsideration on February 8, 2024. Tr. 90, 135-136. On July 23, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 47-89. Following the hearing, on August 12, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 17-39. On May 5, 2025, the Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a). Plaintiff filed this action for judicial review on May 16, 2025. ECF No. 1.

---

[1] 42 U.S.C. §§ 301 et seq.

*Al-Nissa J. v. Frank Bisignano*
Civil No. 25-1593-DRM
April 21, 2026
Page 2

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since December 8, 2021, the alleged onset date." Tr. 20. At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "De Quervain's tenosynovitis; left wrist ligament rupture; lumbar degenerative disc disease; degenerative joint disease of the bilateral knees; anemia and posttraumatic stress disorder (PTSD)." Tr. 20 At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 21. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently reach, handle, finger and feel bilaterally. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes or scaffolds. She can only occasionally be exposed to moving mechanical parts, unprotected heights and vibration. She can understand, remember and carry out simple instructions. She can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota.

Tr. 23. At steps four and five, the ALJ determined that Plaintiff was unable to perform any past relevant work but could perform jobs that existed in significant numbers in the national economy, such as marker, non postal mail clerk, and router. Tr. 36-38. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 38.

## III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept

*Al-Nissa J. v. Frank Bisignano*
Civil No. 25-1593-DRM
April 21, 2026
Page 3

as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.    ANALYSIS

On appeal, Plaintiff makes two arguments. First, she argues that the ALJ never assessed Plaintiff's exertional capacity on a function-by-function basis in determining the RFC, which violates Social Security Ruling 96-8p and warrants remand. ECF No. 12 at 8. Second, Plaintiff contends that the ALJ gave an inadequate hypothetical to the vocational expert ("VE") on which the VE later improperly relied. *Id.* at 18. Specifically, Plaintiff alleges that the ALJ failed to define "specific production rate pace" in the hypothetical, which frustrates meaningful judicial review. *Id.* at 19, 21.

In response, the Commissioner contends that the ALJ did provide a sufficient function-by-function analysis in assessing Plaintiff's RFC. ECF No. 17 at 5. The ALJ purportedly analyzed Plaintiff's abilities in a narrative discussion that went through her medical record and determined that she should be limited to light exertional work without additional limitations. *Id.* at 7. Next, the Commissioner argues that the ALJ properly defined "specific production rate pace." *Id.* at 10. He argues that Plaintiff did not properly preserve this issue, that the language used has a commonly understood meaning, and that there is no per se rule requiring remand for lack of a definition. *Id.* at 10-11. Plaintiff replies by reasserting that the ALJ failed to provide a function-by-function analysis and provided an inadequate hypothetical to the VE.[2] ECF No. 18 at 2-3.

This opinion focuses on Plaintif's second argument, related to the RFC limitation to "tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota." Tr. 23.

In *Thomas v. Berryhill*, the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court

---

[2] The Commissioner contends that Plaintiff forfeited any challenge to the language used in the hypothetical posed to the vocational expert by failing to raise the issue during the expert's testimony. In support, the Commissioner relies exclusively on decisions from the Middle District of North Carolina, which he cites without further explanation as to how their reasoning applies to the circumstances of this case. Those cases are not binding on this Court, and the Court has been unable to identify any controlling authority adopting such a forfeiture rule.

*Al-Nissa J. v. Frank Bisignano*
Civil No. 25-1593-DRM
April 21, 2026
Page 4

concluded that it was "difficult, if not impossible" to determine "whether their inclusion in [the] RFC is supported by substantial evidence." *Id*. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at 313, n.5.

Although the court in *Thomas* identified additional grounds for remand, later decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. *See Perry v. Berryhill,* 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how [she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions'") (quoting *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015)). *See also, e.g., Adrian H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3268, 2022 WL 112033, at *1 (D. Md. Jan. 12, 2022) (remanding where an "ALJ presented the VE with a hypothetical including 'no fast pace or strict production requirements,' with no further definition of those terms"); *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021) (remanding where RFC limited plaintiff to work "requiring no fast paced production," which the court analogized to the terms in *Thomas* and *Perry* "both in form and defect"); *Jennifer Anne S. v. Saul*, No. TMD 20-519, 2021 WL 2139432, at *5 (D. Md. May 26, 2021) (remanding where RFC limited plaintiff to work "which would not require a fast pace or production quotas such as would customarily be found working on an assembly line" and collecting cases remanding based on similar undefined RFC terms); *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("First, while the phrase 'production rate pace' is used in an appendix to the DOT, a definition is not provided. Second, the term 'production pace or strict production quotas' is directly analogous to the term deemed problematic in *Thomas*, and the Court cannot ascertain how the inclusion of the word 'strict' would cure the problem identified by the Fourth Circuit.")[3]; *Nora P. v. Comm'r Soc. Sec.*, No. SAG-18-1604, 2019 U.S. Dist. LEXIS 68383, at *4-5 (D. Md. Apr. 23, 2019) (remand warranted where RFC failed to define phrase "no fast pace or strict production requirements.").

Some cases have affirmed RFC language or VE hypotheticals in which ALJs have elaborated on "production rate pace," or similar terms, with additional descriptors or examples.

---

[3] The term "production rate pace" appears in Appendix C to the Department of Labor's *Dictionary of Occupational Titles*, in a section enumerating three situations in which occupations that would otherwise be classified as "sedentary work" (because the amount of weight lifted is negligible) instead qualify as "light work." The third such situation is: "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C — Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The discussion goes on to explain: "NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." *Id.* However, no definition is given of "production rate pace," and its use in this narrow context does not elucidate a general meaning.

*Al-Nissa J. v. Frank Bisignano*
Civil No. 25-1593-DRM
April 21, 2026
Page 5

*Briana H. v. O'Malley*, No. 23-1288-CDA, 2024 WL 4349836, at *5 (D. Md. Sept. 30, 2024) (affirming where "here, unlike in *Thomas*, the ALJ defined 'production rate' in the hypothetical question to the VE explaining that the 'no production rate requirement' meant 'assembly line work.'"); *Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (affirming where RFC excluded "fast-paced production work" and ALJ stated to VE "[a]nd they could not perform work that would require fast-productivity goals, like — like assembly-line work."). *See also Melissa J. v. Kijakazi*, No. 22-1003-BAH, 2023 WL 206686, at *3 (D. Md. Jan. 13, 2023) (collecting cases which "have held a limitation on 'production rate or pace' combined with a prohibition on quotas provides enough detail for judicial review.")

However, the Fourth Circuit subsequently held in *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description of a limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry*, 765 F. App'x at 872). The Court finds the reasoning of *Linger* persuasive[4] in elucidating the holding of *Thomas* for situations where ALJs provide examples such as assembly line work or time- or piece-based quotas. These examples do not ultimately clarify the meaning of terms like "a production rate or demand pace," *Thomas*, 916 F.3d at 312, or "fast paced production requirements," *Linger*, 2025 WL 40548, at *4, and it is questionable whether the outcomes of *Briana H.*, *Jackie W.*, or *Melissa J.* could be the same following this elucidation.

Here, the RFC term "specific production rate pace," Tr. 23, is "analogous to the terms in *Thomas* ('production rate' or 'demand pace') and *Perry* ('non-production oriented work setting'), both in form and defect." *Trena Sue Y.*, 2021 WL 4034264, at *4. The examples given: "such as assembly line work or an hourly production quota," Tr. 23, fail to clarify the term's meaning for the same reason that the examples "such as assembly line work or piecemeal quotas" failed in *Linger*. Indeed, this Court has recently remanded very similar formulations for the same reasons. *Jason M. v. Bisignano*, No. DRM-25-0358, 2026 WL 523879, at *2-*4 (D. Md. Feb. 25, 2026) ("specific rate production, such as assembly line work or work that requires hourly quotas"); *Chad H. v. Bisignano*, No. DRM-25-0380, 2026 WL 483338, at *3-*5 (D. Md. Feb. 20, 2026) ("specific production rates").

For the same reasons, it is difficult for the Court to ascertain whether the RFC finding in this case was supported by substantial evidence, *see Thomas*, 916 F.3d at 311-12, or whether it was possible for the VE to know whether a person limited to work not involving a "specific production pace rate" could perform the job functions of marker, non postal mail clerk, or router. The mere inclusion of illustrative examples does not establish the logical bridge between the evidence and the RFC limitation required for judicial review.

---

[4] Unpublished Fourth Circuit opinions are "cited for the persuasiveness of their reasoning, not for any precedential value." *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 580 (D. Md. 2022).

*Al-Nissa J. v. Frank Bisignano*
Civil No. 25-1593-DRM
April 21, 2026
Page 6

Because the case is being remanded on other grounds, I need not address Plaintiff's other argument(s). On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.     CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge